April 20, 1979

## 79-28 MEMORANDUM OPINION FOR THE GENERAL COUNSEL, DEPARTMENT OF COMMERCE, AND THE SOLICITOR, DEPARTMENT OF THE INTERIOR

### Coastal Zone Management Act (16 U.S.C. § 1456(c)(1))—Outer Continental Shelf Lands— Applicability of Section 307(c)(1) to Department of the Interior Preleasing Activities Directly Affecting the Coastal Zone—Repeals by Implication

This responds to your request that we address the issue whether the preleasing activities of the Secretary of the Interior relating to the Outer Continental Shelf[1] are subject to the consistency requirement of § 307(c)(1) of the Coastal Zone Management Act, 16 U.S.C. § 1456(c)(1). Section 307(c)(1) provides:

> Each Federal agency conducting or supporting activities directly affecting the coastal zone shall conduct or support those activities in a manner which is, to the maximum extent practicable, consistent with approved state management programs.

The Department of the Interior (Interior) asserts that its preleasing activities relating to the Outer Continental Shelf lands do not directly affect the Coastal Zone, and that the applicability of § 307(c)(1) to those activities was superseded by the Coastal Zone Management Act Amendments of 1976 and the Outer Continental Shelf Lands Act Amendments of 1978. The Department of Commerce disagrees. In its view, the statutory language "*directly* affecting the coastal zone" [emphasis added] must be read as "significantly affecting the coastal zone;" the significance of these

---

[1] The preleasing activities of the Secretary of the Interior include calls for nominations (ascertainment of tracts that the industry would like to have offered for lease, and that other parties believe should not be leased), tract selection, the preparation of an environmental impact statement, consultation with the Governors, and individual tract selection.

activities must be considered in terms of "primary, secondary, and cumulative effects" on the Coastal Zone; and the two amendatory acts have no bearing on the scope of § 307(c)(1).

We have examined the materials submitted with your request, as well as the complex pertinent legislative histories. We conclude (1) that neither the Coastal Zone Management Act Amendments of 1976 nor the Outer Continental Shelf Lands Act Amendments of 1978 affect the application of § 307(c)(1) to Outer Continental Shelf land preleasing activities; (2) that § 307(c)(1) applies only to activities directly affecting the Coastal Zone; and (3) that the Attorney General is not authorized to resolve the factual question whether and to what extent any of the preleasing activities of the Department of the Interior under the Outer Continental Shelf Lands Act directly affect the Coastal Zone.

## I.

The Coastal Zone Management Act, 86 Stat. 1285, 16 U.S.C. § 1451 *et seq.*, is primarily concerned with the effective management, beneficial use, protection, and development of the Coastal Zone. Section 302(a), 16 U.S.C. § 1451(a). The Coastal Zone extends seaward to the outer limit of the United States territorial sea, inland to the shore line, and to a limited extent to the adjacent shore lands. Section 304(1), 16 U.S.C. § 1453(1).[2] The Act is administered by the Secretary of Commerce. Section 304(15), 16 U.S.C. § 1453(15). The Act provides for the development and administration by the States of State management programs for the Coastal Zone. Those programs require the approval of the Secretary of Commerce. Sections 305, 306, 16 U.S.C. §§ 1454, 1455.

The Outer Continental Shelf Lands Act of 1953, as amended, provides that the Secretary of the Interior shall administer the program of oil and gas leasing on the Outer Continental Shelf. Sections 5 and 6, 43 U.S.C. §§ 1334, 1335. The Outer Continental Shelf consists generally of the submerged lands lying seaward of the Coastal Zone of which the subsoil and seabed appertain to the United States and are subject to its jurisdiction and control. § 2(a), 43 U.S.C. § 1331(a).

The basic issue is whether and to what extent the preleasing activities of the Secretary of the Interior under the Outer Continental Shelf Lands Act are subject to the provisions of § 307(c)(1) of the Coastal Zone Management Act.

### A. The Coastal Zone Management Act Amendments of 1976

Section 6 of the Coastal Zone Management Act Amendments of 1976

---

[2] Section 2(e) of the Outer Continental Shelf Lands Act, as added by § 201(b) of the Amendments of 1978, 43 U.S.C. § 1331(e), uses the same definition.

added to § 307(c)(3) a new paragraph (B).[3] The Department of the Interior contends that this paragraph is intended to constitute the exclusive method by which, and the only stage at which, the consistency of all aspects of the Outer Continental Shelf Lands leasing process, including preleasing activities, with the State management programs is to be determined and that the new paragraph *pro tanto* supersedes the consistency requirement of §307 (c)(1). We cannot concur in that interpretation of the 1976 Amendments.

The enactment of § 307(c)(3)(B) originated from a dispute between the Department of the Interior and the Department of Commerce concerning the proper interpretation of § 307(c)(3), now § 307(c)(3)(A).[4] That

---

[3] Section 307(c)(3)(B), as amended by the Outer Continental Shelf Lands Act Amendment of 1978, § 504, provides:

(B) After the management program of any coastal state has been approved by the Secretary under section 1455 of this title, any person who submits to the Secretary of the Interior any plan for the exploration or development of, or production from, any area which has been leased under the Outer Continental Shelf Lands Act (43 U.S.C. 1331 *et seq.*) and regulations under such Act shall, with respect to any exploration, development, or production described in such plan and affecting any land use or water use in the coastal zone of such state, attach to such plan a certification that each activity which is described in detail in such plan complies with such state's approved management program and will be carried out in a manner consistent with such program. No Federal official or agency shall grant such person any license or permit for any activity described in detail in such plan until such state or its designated agency receives a copy of such certification and plan, together with any other necessary data and information, and until—

    (i) such state or its designated agency, in accordance with the procedures required to be established by such state pursuant to subparagraph (A), concurs with such person's certification and notifies the Secretary and the Secretary of the Interior of such concurrence;

    (ii) concurrence by such state with such certification is conclusively presumed as provided for in subparagraph (A), except if such state fails to concur with or object to such certification within three months after receipt of its copy of such certification and supporting information, such state shall provide the Secretary, the appropriate federal agency, and such person with a written statement describing the status of review and the basis for further delay in issuing a final decision, and if such statement is not provided, concurrence by such state with such certification shall be conclusively presumed; or

    (iii) the Secretary finds, pursuant to subparagraph (A), that each activity which is described in detail in such plan is consistent with the objectives of this chapter or is otherwise necessary in the interest of national security. If a state concurs or is conclusively presumed to concur, or if the Secretary makes such a finding, the provisions of subparagraph (A) are not applicable with respect to such person, such state, and any Federal license or permit which is required to conduct any activity affecting land uses or water uses in the coastal zone of such state which is described in detail in the plan to which such concurrence or finding applies. If such state objects to such certification and if the Secretary fails to make a finding under clause (iii) with respect to such certification, or if such person fails substantially to comply with such plan as submitted, such person shall submit an amendment to such plan, or a new plan, to the Secretary of the Interior. With respect to any amendment or new plan submitted to the Secretary of the Interior pursuant to the preceding sentence, the applicable time period for purposes of concurrence by conclusive presumption under subparagraph (A) is 3 months.

[4] Section 307(c)(3)(A) provides:

(3)(A) After final approval by the Secretary of a state's management program, any applicant for a required Federal license or permit to conduct an activity affecting land or

(Continued)

paragraph provides that, after a State's management program has been approved by the Secretary of Commerce, an applicant for a Federal permit or license for an activity affecting the Coastal Zone must include in the application a certification that the proposed activity complies with the State's program, and that the activity will be conducted in accordance with that program.[5] The Department of the Interior contended that leases in the Outer Continental Shelf did not come within the purview of the provision; the Department of Commerce took the opposite position.

This dispute came to the attention of Congress during its consideration of the Coastal Zone Act Amendments of 1976. Both legislative committees concluded that § 307(c)(3) is intended, and indeed always was intended, to cover leases, and reported out bills amending § 307(c)(3) by adding the word "lease" to the words "license or permit" already included in the paragraph. S. Rept. 94-277, pp. 19, 36-37, 53, 59; H. Rept. 94-878, pp. 4, 52, 67-68, 48.

The Senate concurred in the committee report. The bill passed by it amended § 307(c)(3) to include the word "lease." 121 CONGRESSIONAL RECORD 23050, 23086.[6] When the bill reached the floor of the House it contained the same provision. 122 CONGRESSIONAL RECORD 6124. The amendment of § 307(c)(3), however, was stricken on motion of Congressman duPont because he felt, on the basis of testimony received from the Administration and the industry, that more time was needed to evaluate the full impact of the proposed amendment. He continued:

---

(Continued)

water uses in the coastal zone of that state shall provide in the application to the licensing or permitting agency a certification that the proposed activity complies with the state's approved program and that such activity will be conducted in a manner consistent with the program. At the same time, the applicant shall furnish to the state or its designated agency a copy of the certification, with all necessary information and data. Each coastal state shall establish procedures for public notice in the case of all such certifications and, to the extent it deems appropriate, procedures for public hearings in connection therewith. At the earliest practicable time, the state or its designated agency shall notify the Federal agency concerned that the state concurs with or objects to the applicant's certification. If the state or its designated agency fails to furnish the required notification within six months after receipt of its copy of the applicant's certification, the state's concurrence with the certification shall be conclusively presumed. No license or permit shall be granted by the Federal agency until the state or its designated agency has concurred with the applicant's certification or until, by the state's failure to act, the concurrence is conclusively presumed, unless the Secretary, on his own initiative or upon appeal by the applicant, finds, after providing a reasonable opportunity for detailed comments from the Federal agency involved and from the state, that the activity is consistent with the objectives of this chapter or is otherwise necessary in the interest of national security.

[5] State concurrence in the certification is presumed if it fails to object within 6 months after receipt of a copy of the applicant's certification. The permit or license may not issue unless the State concurs in the certification or is presumed to have concurred, or unless the Secretary of Commerce finds that the activity is consistent with the objectives of the Act or otherwise necessary in the interest of national security.

[6] *See also* the explanation of the provision by Senator Hollings, who was in charge of the legislation. 121 CONGRESSIONAL RECORD 23053.

By striking it in the House bill and leaving it in the bill that has already passed the Senate we will be giving ourselves a little bit of flexibility in the conference to either adopt the language as the Senate put it in or adopt some other language we feel would be more beneficial and at the same time protect the rights of the States.

So the purpose of this amendment is not to get rid of the word "lease" but to allow us time to work on the problem a little bit longer. [122 CONGRESSIONAL RECORD 6128.]

Representative Murphy, who was in charge of the legislation in the House, accepted the amendment, pointing out that even if an applicant were granted a lease the statute required permits and licenses to be subject to the consistency requirement of § 307(c)(3). *Ibid*. This observation appears to have been related to the position taken by the Department of the Interior concerning the interminable delays that would result if every lease and related permit and license were to be subject to the procedures of § 307(c)(3), a matter that could bring about repeated delays. *See* the letter from Secretary of the Interior Kleppe to the Director, Office of Management and Budget, dated May 24, 1976.

The conference report adopted by both Houses provided that § 307(c)(3) should be divided. The original paragraph became § 307(c)(3)(A), and the committee added a new paragraph (B). *See,* footnote 3, *supra*. The import of the new paragraph is that an individual or organization submitting to the Secretary of the Interior a plan for the exploration, development of, or production from, an area leased under the continental Shelf Lands Act must submit a certification similar to the one required under paragraph (A). If the State agreed to the certification or did not object within 6 months, or if the Secretary of Commerce made a finding of consistency, subsequent requests for permits or licenses required for activities described in detail in such plan would not have to go through the conformity procedures provided for in paragraph (A).

The conference report contains the following explanation of the amendment:

Also, under the substitute, any subsequent OCS [Outer Continental Shelf] Federal license or permit required for activities specified in any exploration, development, and production plan are presumed to be consistent once the plan is certified as being so consistent. This important change will significantly expedite OCS oil and gas development. Under present Department of Interior regulations, Federal permits are required for a large number of individual activities, including geophysical exploration, bottom sampling, well drilling for exploration or production, pipeline right-of-way, structure placement, waste discharge, and dredging and filling operations. Thus, separate consistency determination on each activity, described in detail in an exploration, development or production plan, will not be necessary. [H. Rept. 94–1298, pp. 30–31.]

193

The explanation of the conference report on the floor of the Senate by Senator Hollings contained the following observation:

> Third, a new incentive for expediting determination of whether particular off-shore energy activity is consistent with a coastal State's approved management program, on an overall plan basis rather than on an individual license/permit by license/permit basis; * * *. [122 CONGRESSIONAL RECORD 21230.]

The amendment was thus designed to overcome the difficulties adverted to by Secretary Kleppe, namely, that a new conformity review under § 307(c)(3), involving a 6-month delay, would be required every time the lessee of Outer Continental Shelf Lands had to apply for a new license or permit.

The Department of the Interior believes that paragraph (B) embodies an exclusive provision concerning the consistency requirement of the Outer Continental Shelf lands leasing process with Coastal Zone State management plans, and that it therefore supersedes § 307(c)(1) with respect to the entire process, including the preleasing stage. It relies on the doctrine of repeal by implication. The Supreme Court, however, has consistently applied the rule that a repealing intention of the legislation to repeal must be clear and manifest; that every attempt must be made to reconcile the statutes involved; and that a repeal by implication will be found only where there is a "positive repugnancy" between the statutes. *Morton* v. *Mancari*, 417 U.S. 535, 549–551 (1974); *Borden* v. *United States*, 308 U.S. 188, 198–199 (1939).

In our view, the relationship between § 307(c)(1) and 307(c)(3)(B) does not meet these rigorous standards, at least not for the preleasing period.[7] The two provisions can readily coexist during that period and there is no "positive repugnancy." There is nothing explicit or implied in the 1976 Amendments to the effect that the procedure set forth in § 307(c)(3)(B) provides the only consistency requirement for the Outer Continental Shelf land leasing process. Paragraph (B) is designed to relieve the lessee of the burdens and delays resulting from successive consistency determinations for the many license and permit applications that may follow the grant of a lease and the approval of an exploration, development, or produciton plan. Under § 307(c)(3)(B) there will be a single consistency review following the submission of the plan and that review will cover any future activities described in detail in the plan. Section 307(c)(3)(B) thus simplifies the regulatory process during the postleasing period. It has no bearing on the consistency requirements antedating that stage of the leasing process. It is well possible that some of the preleasing activities of Interior will give

---

[7] We need not examine the question, not presented by your inquiry, whether once a plan for the exploration, or development, or production envisaged by § 307(c)(3)(B) has been filed, that paragraph becomes the exclusive procedure for the determination of the consistency requirement, covering both the Department of the Interior and the lessee, or whether the Department of the Interior remains subject to the additional consistency requirement of § 307(c)(1).

rise to consistency problems that cannot be reviewed at all under the paragraph (B) procedure, or for which such review comes too late. It is our opinion that with respect to preleasing activities § 307(c)(1) and § 307(c)(3)(B) can both be given effect, and accordingly that the enactment of § 307(c)(3)(B) does not disclose any clear and manifest legislative intent to supersede, and does not supersede, the applicability of § 307(c)(1) to those preleasing activities of Interior relating to the Outer Continental Shelf lands that come within the scope of that section.

### B. The Outer Continental Shelf Lands Act Amendments of 1978

The second statute that according to Interior supersedes § 307(c)(1) regarding leases is the Outer Continental Shelf Lands Act Amendments of 1978. Section 208 of that Act adds to the Outer Continental Shelf Lands Act of 1953 a number of new sections containing specific procedures for the Outer Continental Shelf lands leasing program. Some of those provisions are expressly adjusted to the Coastal Zone Management Act. (*See especially* the repeated references to §§ 306 and 307(c)(3)(B) of the Coastal Zone Management Act in § 25 of the Outer Continental Shelf Lands Act, added by the 1978 Amendments, 43 U.S.C. § 1351.)

The most significant apparent conflict between the 1978 Amendments and § 307(c)(1) appears in § 19 of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1345, entitled "Coordinaton and Consultation with Affected State and Local Governments." Pursuant to § 19(c), the Governor of a State, or the executive officer of an affected local government, may submit to the Secretary of the Interior recommendations regarding the size, timing, or location of a proposed lease sale or with respect to a proposed development or production plan. It provides that the Secretary of the Interior shall accept those recommendations unless he decides that they do not provide for a reasonable balance between the national interest [in increasing oil production] and the well-being of the citizens of the affected State. The pertinent committee reports say that no "State should have a veto power over OCS [Outer Continental Shelf] oil and gas activities." S. Rept. 95-284, p. 78; H. Rept. 95-590, p. 153.

Although we might be inclined to find a clear legislative intent that the recommendations referred to in § 19(c) were designed to take the place of the conformity requirement of § 307(c)(1) of the Coastal Zone Management Act, the language and legislative history of the 1978 Amendments refute that intent.

Section 608(a) of the 1978 Amendments provides expressly that:

> Except as otherwise expressly provided in this Act, nothing in this Act shall be construed to amend, modify, or repeal any provision of the Coastal Zone Management Act of 1972 * * *.

More specifically, the section-by-section analysis of § 19 in the House report contains the following footnote expressly disclaiming any congressional intent to modify by implication the consistency requirements of the Coastal Zone Management Act:

The committee is aware that under the Coastal Zone Management Act of 1972, as amended in 1976 (16 U.S.C. 1451 *et seq.*), certain OCS [Outer Continental Shelf] activities including lease sales and approval of development and production plans must comply with "consistency" requirements as to coastal zone management plans approved by the Secretary of Commerce. Except for specific changes made by Titles IV and V of the 1977 Amendments, nothing in this Act is intended to amend modify or repeal any provision of the Coastal Zone Management Act. Specifically, nothing is intended to alter procedures under that Act for consistency once a State has an approved Coastal Zone Management Plan. [H. Rept. 95-590, p. 153, fn. 52.][1]

We conclude that neither the Coastal Zone Management Act Amendment of 1976 nor the Outer Continental Shelf Lands Act Amendments of 1978 affect the application of the consistency requirement of § 307(c)(1) of the Coastal Zone Management Act to the preleasing activities of the Department of the Interior.

## II.

Having determined that the preleasing activities of the Secretary of the Interior are subject to the conformity requirement of § 307(c)(1) of the Coastal Zone Management Act, we reach the second question posed in the submission. Interior contends that, if § 307(c)(1) applies at all to its preleasing activities, it applies only to those activities which, according to the plain statutory language of the paragraph, directly affect the Coastal Zone.

The implementing regulations issued by the Department of Commerce in 1978, however, substitute the term "significantly" for the statutory word "directly" and define "significantly" in terms of "primary, secondary, and cumulative effects." 15 CFR §§ 930.30, 43 F.R. 10518-10519. The Department explains its departure from the statutory language on the ground that, while the various provisions relating to the consistency requirement are not uniform in language, the legislative history is "replete" with statements that Congress intended to cover all Federal activities capable of significantly affecting the Coastal Zone. *See* 43 F.R. 10511. In our view, the legislative history does not justify the departure.

Prior to the conference, the text of § 307(c)(1), as passed by both Houses of Congress, subjected all Federal activities in the Coastal Zone, to the consistency requirement. Senate: 118 CONGRESSIONAL RECORD 14190 (§ 314(b)(1)); House: 118 CONGRESSIONAL RECORD 26502 (§ 307(c)(1)). The conference committee changed Federal activities "in the Coastal

---

[1] The House report was submitted in 1977. Title V of the 1978 Amendments contains express amendments to the Coastal Zone Management Act. Section 504 modifies § 307(c)(3)(B)(ii).

Zone" to the present statutory language of "directly affecting the Coastal Zone." The explanatory statement in the conference report does not explain why the committee departed from the language common to the bill as it had passed both Houses.[9] The statement, however, indicates a full awareness that the different paragraphs of § 307(c) applied different standards of Federal impact on the Coastal Zone: § 307(c)(1), "directly affecting;" § 307(c)(2), "in the Coastal Zone;"[10] § 307(c)(3), "similar consideration."

In the light of this history of the words "directly affecting," we are unable to accept an interpretation that would dilute "directly," first to "significantly" and then to "primarily, secondarily, and cumulatively."

Finally, in our discussion of the question of repeal by implication we have pointed out that § 307(c)(1) and § 307(c)(3)(B) are separate provisions dealing with different stages of the leasing process. We have concluded that the provision concerning the postleasing process does not necessarily repeal a provision addressed to the preleasing stage. Similarly, when the statute provides for different impact requirements at different stages of the leasing process, there is no need, and indeed no justification, for an attempt to obliterate those express statutory differences by regulation. It is our opinion that the conformity requirement of § 307(c)(1) applies only to the preleasing activities of the Department of Interior directly affecting the Coastal Zone. The question whether those activities or any of them directly affect the Coastal Zone is essentially one of fact which the Attorney General is not authorized to address. See 28 Op. Att'y Gen. 218, 22 (1910); 39 Op. Att'y Gen. 425, 428 (1940).

LEON ULMAN

*Deputy Assistant Attorney General*

*Office of Legal Counsel*

---

[9] "They (the conferees) also agreed that as to Federal agencies involved in any activities *directly affecting* the State coastal zone and any Federal participation in development projects *in the coastal zone*, the Federal agencies must make certain that their activities are to the maximum extent practicable consistent with approved State management programs. In addition, *similar consideration* of State management programs must be given in the process of issuing Federal licenses or permits for activities affecting State coastal zones." H. Rept. 92-1544, p. 14. [Emphasis added.]

[10] The regulations issued by the Department of Commerce extend the "significantly affect" tests even to § 307(c)(2), which in terms applies only to activities "in the Coastal Zone."